UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| TELSWITCH, INC., | No. C 12-00172 EMC (LB) |
| Plaintiffs,<br>v. | **ORDER RE: 7/13/2012 JOINT LETTER BRIEF** |
| BILLING SOLUTIONS INCORPORATED, an Illinois Corporations, SEAN DUNLEA, an individual, TIM PORTLEY, an individual, DARIO J. SAAL, an individual, SAAL CONSULTING INC., a Florida Corporation and DOES ONE THROUGH TWENTY, inclusive, | [ECF No. 36] |
| Defendants.<br>_____/ | |
| BILLING SOLUTIONS INCORPORATED, an Illinois Corporations, SEAN DUNLEA, an individual, TIM PORTLEY, an individual, | |
| Counter-claimants,<br>v. | |
| TELSWITCH, INC., MERKT-WOOLFSON, AARON WOOLFSON, JERRY MERKT, and ROES 1-50, | |
| Counter-defendants.<br>_____/ | |

## I. INTRODUCTION

This case arises out of a business relationship that went awry, resulting in accusations including

fraud, computer hacking, breach of contract, and misappropriation of trade secrets. Plaintiff, TelSwitch, Inc. ("TelSwitch") is a California company that owns and licenses various proprietary technologies, including an SQL-based billing software program named "Airnet." Compl., ECF No. 1, ¶ 1.[1] Defendant, Billing Solutions Incorporated ("BSI"), licensed Airnet and other products from TelSwitch for use in its business. Answer, ECF No. 6, ¶ 3. TelSwitch alleges that BSI misappropriated trade secrets incorporated in the Airnet database. Compl., ECF No. 1, ¶¶ 26-30. Under California law, misappropriation of trade secrets plaintiffs must formally disclose the trade secrets in question before commencing discovery. Cal. Civ. Proc. Code § 2019.210. On July 13, 2012, the parties filed a joint letter brief disputing whether TelSwitch's disclosure satisfies the statutory requirement. *See* ECF No. 36. The district court referred the discovery dispute to this court. *See* ECF No. 42.

Based on concessions on the record, the court deems the disclosure – as defined on the record at the September 6, 2012 hearing and as transcribed by the court reporter – sufficient and orders that TelSwitch may not amend its disclosure again.

## II. FACTS

The parties dispute whether TelSwitch's June 22, 2012 Trade Secret Disclosure satisfies the requirements of California Code of Civil Procedure section 2019.210. *See* Joint Letter Brief, ECF No. 36. On June 22, 2012, TelSwitch served Defendants with a document purportedly disclosing the trade secrets TelSwitch claims Defendants misappropriated (the "Disclosure"). *See* ECF No. 36 at 4-12. The Disclosure is an eight-page document with a one-page Entity Relationship Diagram. ECF No. 36 at 4-12.

TelSwitch explains its product, Airnet, is a system comprised of "(1) the Airnet SQL database, (2) customized Crystal Reports™ templates that interface with the Airnet SQL database to generate reports, and (3) the Airnet client. The sole trade secret at issue in this case is the structure of the Airnet SQL database, which follows a relational database model." *Id.* at 5.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the court-generated page numbers at the top of the document.

TelSwitch defines a database as "a structure that organizes and stores data in 'tables,' which in turn contain 'fields.'" *Id.* at 5. A simple database that stores all of the data in a single table is known as a flat file database. *Id.* In contrast, a relational database like the Airnet SQL database contains multiple tables, "each table having at least one field in common with at least one other table. The tables connect . . . to each other via pathways between these common fields. The pathways that relate tables to one another are called 'joins.'" *Id.* at 6. The joins permit the user to cross-reference related data across the various tables in the database. Database designers typically favor relational databases because they more efficiently store and access information than flat-file databases. *Id.*

"Building any database involves designing the architecture of specific tables, fields, and joins that will most effectively serve the database user's purposes. The architect of a database therefore bases his design on, among other things, his predictions of: (1) how much data the database will need to manage; (2) how often the database user's business will require access to each individual table and field; and (3) how any particular configuration of tables, fields, and joins will affect the efficiency of the database's operation." *Id.* at 9. TelSwitch explains that the tables, fields, and joins in the Airnet SQL database are configured for automated billing systems that must manage huge amounts of data. *Id.*

TelSwitch "asserts trade secret rights in the unique configuration of tables, fields, and joins that is the structure of the Airnet SQL database." *Id.* TelSwitch claims that this unique configuration is depicted in the Entity Relationship Diagram ("ERD") submitted with the Disclosure. An ERD is a schematic depicting a database's structure. An ERD depicts the tables, fields and sometimes the joins of a relational database. The ERD on page 12 of the Disclosure depicts the structure of the Airnet SQL database. *Id.* at 10. The ERD in the disclosure does not depict the Airnet SQL database's joins. *Id.*

TelSwitch clams that the value of the database's structure is demonstrated by the fact that TelSwitch's customers pay to license it. *Id.* at 9-10. TelSwitch also claims that is has protected the confidentiality of the Airnet SQL database's structure, such that it is not a matter of general knowledge. *Id.* at 11. TelSwitch typically discloses the database's structure to it customers' system

C 12-00172 EMC (LB)
ORDER
3

developers so that they can integrate Airnet into their internal systems. *Id.* at 10-11. TelSwitch also permits its customers' system developers to modify the database structure to suit the customer's specific needs. *Id.* at 11. TelSwitch claims that it only discloses the database structure to individuals and entities that have signed license agreements with TelSwitch. *Id.* The license agreements limit the licensees' access to the Airnet SQL database for purposes of integration and use during the license period and also prohibit the licensees from disclosing the Airnet SQL database or its structure to third parties. *Id.*

## III. LEGAL STANDARD

A party alleging trade secret misappropriation under the California Uniform Trade Secret Act ("CUTSA"), Cal. Civil Code section 3426 *et seq.*, must identify the trade secret with "reasonable particularity" prior to commencing discovery. Cal. Civ. Proc. Code § 2019.210.[2] CUTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1; *see also IMAX Corp. V. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998). The purposes of section 2019.210 include (1) promoting well-investigated claims and dissuading meritless ones; (2) preventing plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets; (3) assisting the court in managing the discovery process; and (4) enabling defendants to form well-reasoned defenses and ensuring that they need not wait until the eve of trial effectively defend against charges of trade secret misappropriation. *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 833-34 (2005) (*quoting Computer Economics, Inc. v. Gartner* Group *Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999)

---

[2] Federal district courts have reached various conclusions about whether section 2019.210 applies in federal court. *See Social Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *1-*3 (N.D. Cal. June 14, 2012) (collecting cases); *see Neothermia Corp. v. Rubicor Medical, Inc.*, 345 F. Supp. 2d 1042, 1043-44 (N.D. Cal. 2004) (Chen, J.) (same conclusion under previous version of statute). This court finds the reasoning in *Social Apps* persuasive and follows it here. *See id.* And here, the parties assume the applicability of the section.

(quotation marks omitted).

Section 2019.210's reasonable particularity requirement is a flexible standard. *Brescia v. Angelin*, 172 Cal. App. 4th 133, 148-49 (2009). Reasonable particularity does not require a party to define its trade secret down to the finest detail or require a mini-trial on misappropriation before plaintiff is allowed discovery. *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005). Still, the plaintiff must "make some showing that is reasonable, i.e., fair, proper, just and rational . . . under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Id.* at 836. "In a highly specialized technical field . . . a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1351 (2009).

In considering the adequacy of a trade secret disclosure, the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Brescia*, 172 Cal. App. 4th at 149. Still, "a court does not abuse its discretion by compelling a plaintiff to produce a clear, non-evasive trade secret statement." *Perlan*, 178 Cal. App. 4th at 1352.

## IV. DISCUSSION

The parties' joint letter brief asks the court to decide whether TelSwitch's section trade secret disclosure is sufficient under section 2109.210 such that discovery should commence. The court addresses this issue in section A (and holds that the disclosure as clarified on the record is sufficient). In section B, and with the agreement of the parties, the court orders that TelSwitch may not amend its disclosure again.

### A. **Whether TelSwitch's Disclosure Adequately Identifies its Alleged Trade Secret**

The Disclosure provides helpful background information on database architecture but really just explains that TelSwitch "is only claiming trade secret rights in the database structure depicted by the ERD" attached to the Disclosure. ECF No. 36 at 10. Stated differently, TelSwitch claims trade

secret rights in the ERD's depiction of "the unique configuration of tables, fields, and joins that is the structure of the Airnet SQL database." ECF No. 36 at 9. The court notes that the ERD depicts numerous tables and the fields within each table.[3] *See* ECF No. 36 at 12. The tables are grouped into boxes that bear labels correlating to various functions of the database. *See id.* The table and field names do not obviously indicate the type of data each would contain. Rather, they appear to be either idiosyncratic to TelSwitch's database or are terms of art known to database administrators. At the hearing, TelSwitch explained that the terms were not idiosyncratic but could be anything. For example, "acct" could be "orange." Finally, the ERD omits the "joins" that link the fields together. At the hearing, TelSwitch confirmed that it had not shown the joins specifically but said that they were there. Then it clarified (as described below) that it limited the scope of the claim to the precise database disclosed in the ERD.

Defendants argued in the letter that the ERD does not adequately describe any trade secrets. *Id.* at 2. "It merely lists SQL tables without any portrayal of what is a trade secret." *Id.* According to Defendants, this is inadequate because it does not describe the alleged trade secret with particularity, does not separate the alleged trade secret from matters of general knowledge, and does not permit Defendants to ascertain what particular items are alleged to be trade secret. ECF No. 36 at 1.

TelSwitch responds by pointing out that section 2019.210 only requires the trade secret to be identified with "reasonable particularity" and will be satisfied even where undeniable evidence indicates that the plaintiff will not be able to establish the other elements of a trade secret claim. *See id.* at 3 (quoting *Perlan*, 178 Cal. App. 4th at 1351). Then, it said at the hearing that what it had done was to limit the scope of the claim to the precise database structure disclosed in the ERD and agreed on the record that it would not seek to amend its disclosure again.

As the court said at the hearing, based on the representations in the letter, the ERD did not seem specific enough. The ERD has tables and fields that describe functions (some generic and obvious like "date," "city," or "type," and others that are more specific. But there is nothing about the ERD

---

[3] Due to the confidentiality concerns inherent in a trade secret case, the court will only describe the ERD in general terms. *Accord, Advanced Modular Sputtering*, 132 Cal. App. 4th at 831 n.2.

standing alone that explains what type of data is contained in particular tables and fields. Nor does the ERD distinguish between the configuration of tables, fields, and joins that constitutes TelSwitch's claimed trade secret and those configurations that are commonly used in databases. Instead, the Disclosure states only that "we claim trade secrets in the database structure depicted by the ERD." *See id.* at 9 (page 7:15-18) (noting that "[t]he copy of the Airnet SQL database included on the enclosed drive is simply provided as a sample to show TelSwitch's database structure in use"). Before the hearing, the court thought that maybe TelSwitch is trying to assert a trade secret in the database as an indivisible whole, but it had not said that specifically. nd the court's view was that the record suggested that TelSwitch's claim is not so simple. For example, TelSwitch acknowledges that it permits its customers to "make modifications to the [database] structure to meet [their] system's specific needs." *Id.* at 11.

But at the hearing, Telswitch agreed that it was limiting the scope of its claims to the precise database disclosed in the ERD, and it agreed – and everyone agreed that the court should order – that it cannot amend its trade secret disclosure again.

As the court said at the hearing, this was a pretty big concession.[4] Without that clarification, it was not explaining what particular structures of its database architecture constitute trade secrets. That approach lets someone hide trade secrets in plain view by surrounding them with those aspects

---

[4] Absent that agreement, it would not be enough. Just from the disclosure, the court was concerned that TelSwitch says that its trade secret is actually a combination of certain parts of its database structure (essentially, its unique configuration) but fails to explain which particular structures of its database architecture constitute trade secrets. That disclosure would have been inadequate because TelSwitch should identify what is and what is not its trade secret information.

This approach is consistent with what other courts have done. Courts regularly reject section 2019.210 disclosures that do not delineate the boundaries of their trade secrets. For example, in *Perlan*, the court found the plaintiff's trade secret disclosure insufficient in part because it did not clearly explain how the secrets differed from publicly-available information and included a large amount of "surplusage." *See Perlan*, 178 Cal. App. 4th at 1352. Similarly, in *Brescia*, the trial court correctly instructed the plaintiff to "succinctly and with particularity lay out the trade secrets without surplusage instead of essentially hiding the alleged trade secret in plain view by putting lots of clutter around it." *Id.* at 1348 (summarizing *Brescia*).

C 12-00172 EMC (LB)
ORDER
7

of its database architecture that do not constitute trade secrets.[5]

B. **Future Amendments to TelSwitch's Trade Secret Disclosure**

Not only did TelSwitch agree on the record that it would limit the scope of the claim to the precise database structure disclosed in the ERD and that it would not seek to amend its disclosure again, it agreed – and Defendants agreed too – that the court should order that there will be no more amendment of the scope of the trade secrets.

The court so orders.

## V. CONCLUSION

Accordingly, and with the agreement of Defendants on the record, the court orders that TelSwitch's trade secret is now sufficient and TelSwitch may not amend its disclosure again.

This disposes of ECF No. 36.

**IT IS SO ORDERED.**

Dated: August 10, 2012

_____
LAUREL BEELER
United States Magistrate Judge

---

[5] As discussed above, section 2019.210 was designed in part to prevent plaintiffs from using the discovery process to obtain defendants' trade secrets and to enable defendants to form well-reasoned defenses before the eve of trial. The court was concerned that – absent a concession like the one made – TelSwitch could compare its database with Defendants' and refine its misappropriation claim to focus on any similarities in the structures of the two databases. At the same time without more specific information, Defendants would not be able to properly focus their internal investigation on developing defenses specific to TelSwitch's trade secrets.